It is ordered, adjudged, and decreed that the appeal be dismissed.

---

(34 South. 417.)

No. 14,533.

LEO v. TEXAS & PAC. RY. CO.*

(Feb. 16, 1903.)

RAILROADS—DEFECTIVE CROSSING—NEGLI-
GENCE—EVIDENCE.

1. In view of the facts which the court finds established by the evidence in the record, the defendant is in no wise responsible for the injury of which the plaintiff complains.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by S. M. Leo against the Texas & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

William Stirling Parkerson, for appellant. Howe, Spencer & Cocke, for appellee.

MONROE, J. The plaintiff sues for damages for personal injuries alleged to have been sustained by reason of the giving way of a box drain across the public road in the parish of Jefferson, whereby one of his feet went through, and his knee cap was broken. He alleges that the drain in question was put in by defendant for its own purposes; that the property on either side of the road belonged to the defendant; and that it (the defendant) was bound to keep the drain in order, but that it failed to do so, and the drain was in a dangerous condition, to the knowledge of the defendant; and that he (plaintiff) could not have avoided the accident, etc.

The answer is a general denial.

There was judgment in the district court in favor of the defendant, and the plaintiff has appealed.

The facts, as we find them from the evidence in the record, are that the plaintiff, having crossed the river at the Walnut street ferry, was driving a wagon containing plumber's tools and wares in the direction of de-

*Rehearing denied May 11, 1903.

fendant's railway, and had about reached the end of the ramp or incline leading from the ferry, when his horse stumbled or shied, and he was thrown to the ground, thereby sustaining the injury of which he complains—a misfortune for which the defendant is in no wise responsible. Whether the defendant would be liable if the facts were as stated in the petition need not be determined.

Judgment affirmed.

---

(34 South. 417.)

No. 14,319.

L. N. BRUNSWIG & CO. v. WM. S. MERRELL CHEMICAL CO.

(April 27, 1903.)

CONTRACT—CONSTRUCTION—MODIFICATION.

1. In order to avail themselves of the facilities for introducing their goods into the territory covered by plaintiffs' business, the defendant company sold them at reduced rates large quantities of these goods, with the right of exchanging the same for others from time to time, undertaking also to send out their own drummers to assist in the disposal of the same. There was no limitation as to the extent of the right of exchange. The contract provided by its eighth article that on the termination of the contract the right of exchange should continue for six months. After the contract had terminated by mutual consent, the parties modified the eighth article by removing this time limit of six months. The plaintiffs contend that this was the extent of the modification, while defendants maintain the modification was that the right of exchange should continue until the stock in hand should be reduced to a reasonable stock, of which they were to be the judges. The testimony was directly conflicting. *Held*, that plaintiffs' contention was inherently more probable than that of defendants.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by L. N. Brunswig & Company against the William S. Merrell Chemical Company. Judgment for plaintiffs, and defendant appeals. Modified.

Farrar, Jonas & Kruttschnitt, for appellant. William S. Benedict, for appellees.

Statement of the Case.

NICHOLLS, C. J. On the 21st of February, 1899, the plaintiffs and the defendant entered into an agreement, which was prefaced by the declaration that it was entered into

in consideration of certain special concessions in discount prices and terms allowed by W. S. Merrell Chemical Company to L. N. Brunswig & Co., and of a special effort made by said W. S. Merrell Chemical Company to advance the sale of their preparations in the territory tributary to New Orleans, and in the interest of said L. N. Brunswig & Co.

The agreement was one whereby L. N. Brunswig & Co. were to receive from the Merrell Chemical Company the best wholesale discount on their purchases of all preparations quoted in part first of the pamphlet list of the Merrell Chemical Company, and lowest prices on goods listed in part second of said list, with usual terms and conditions of sale to apply to rebate or contract goods; they in return agreeing to give to said W. S. Merrell Chemical Company their active influence and co-operation in extending the sale of the said Merrell Chemical Company's preparations in the above-mentioned territory.

The instrument witnessing the agreements proceeds to say:

"The following conditions are binding on both parties, and form part of this agreement:

"First. That the said Wm. S. Merrell Chemical Company hereby sells to said L. N. Brunswig and Company, and the latter agrees to receive, an assorted stock of the chemical, pharmaceutical and special preparations of said Wm. S. Merrell Company, to the amount of $10,000.00 (ten thousand) over and above all rebates and concessions, net, in accordance with terms and conditions hereinafter named, all the stock thus furnished to be carefully selected to meet the wants of the physicians and druggists of New Orleans and vicinity, and at the prices named in the accompanying schedule of discounts.

"Schedule of Discounts.

"[Here follows a list of discounts].

"Second. The said Wm. S. Merrell Chemical Company agrees to allow freight when shipments are made by routes of their own selection, but they do not insure safe carriage or delivery to points of destination.

"Consignees will be furnished with bills of lading showing contract by transportation company and for loss and damage in transit or for overcharges they must look to them and not to said Wm. S. Merrell Company.

"Third. The stock hereby sold by said Wm. S. Merrell Chemical Company, to said L. N. Brunswig and Company is to be settled in full by note of acceptance at six, nine and twelve months from date of shipment or less 5 per cent. for cash within thirty days of said date. All subsequent orders for the preparations of said Wm. S. Merrell Chemical Company shall be settled for in full by note or acceptance at four months from date of shipment or less three per cent. for cash ten days from said date.

"Fourth. Said party of the second part having received the stock above mentioned and furnished under this contract, hereby agrees that during the life of this agreement they will keep in stock such an assortment of goods and such amounts as will fully meet the requirements of the drug trade and medical profession in aforesaid territory. (See Art. Four of supplement.)

"Fifth. While this contract is in force, said party of the second part agrees to provide such suitable storage for said stock as may be customary in well-regulated drug houses, to keep the stock in good order and to use every effort to advance the sale of the preparations of said Wm. S. Merrell Chemical Company not only by filling the specified demand, but by giving them the preference in their sales, over all other competing lines, in all cases where the preference of the customer is not otherwise expressed.

"Said party of the second part further agrees that no influence shall be used to restrict the sale of the preparations of the Wm. S. Merrell Chemical Company, either by the parties themselves or by any of their employés.

"Sixth. In consideration of such active influence and preference on the part of said L. N. Brunswig and Company, said Wm. S. Merrell Chemical Company hereby further agrees to personally canvass by competent agents the territory tributary to New Orleans and to turn such order for execution to said L. N. Brunswig and Company, and said Merrell and Co. further agree that they will not keep less than three agents constantly at work in the states of Alabama, Missis-

sippi and Florida and one agent stationed at New Orleans with headquarters at L. N. Brunswig and Co., and exclusively in the latter's interest.

"All orders thus taken to be sold to reliable parties, but with the understanding that when the orders are once accepted by the party of the second part all responsibility on the part of said Wm. S. Merrell Chemical Co. shall cease. The intent of this clause being that said party shall have the right to reject any order taken by any agent of said Wm. S. Merrell Chemical Company, provided the credit of the purchaser is not satisfactory.

"Eighth. As a protection to the party of the second part said Wm. S. Merrell Chemical Company hereby agrees to exchange such goods as may be found least desirable for their trade for other articles of their manufacture as said party of second part may select, provided however that the privilege of exchange is exercised within six months following the discontinuance or cancellation of this agreement, and provided also that the prices ruling at the date of exchange shall govern all such transactions and that freight charges connected with such exchange be paid equally by the parties of the first and second parts, conditions of exchange to be within the terms as expressed in a circular of said Wm. S. Merrell Chemical Company, regarding exchanges of stock, which circular forms a part of this agreement; but it is specially understood as a part of this agreement, applying to the original purchase as well as to all subsequent purchases, that articles quoted in part first of the aforesaid pamphlet list shall not be exchangeable for articles quoted in part second and vice versa.

"Ninth. The said Wm. S. Merrell Chemical Company hereby agrees to use every effort to advance sale for their preparations in the territory tributary to the city of New Orleans and to give the benefit of their special and general advertising in the special territory to party of the second part exclusively."

This contract continued on supplement.

An agreement supplementary to this agreement was made the same day between the parties to the following effect:

"1st. That the object and intent of this contract is to establish at New Orleans a distributing depot for the preparations of the said Wm. S. Merrell Chemical Company, for such territory tributary to New Orleans as may not now be represented by special contracts such territory having special reference to the states of Louisiana, Mississippi and Florida and Alabama, excepting connections already established at Selma, Montgomery, Birmingham and Anniston.

"2nd. In consideration of the conditions of preference and active co-operation given by said L. N. Brunswig and Company a special rebate of sixteen and two-thirds (16⅔) per cent. from part first of the pamphlet list of said Merrell Company and a special rebate of 10% (ten per cent.) from part second of pamphlet list (rebate or contract goods series one and two excepted) said rebate to be deducted from each invoice at time of settlement.

"It is further understood and agreed that where rebate or contract goods are sold in gross lots in the above territory either by said Merrell Company or said L. N. Brunswig Company, the latter shall be entitled to and shall receive a special credit of ten (10%) per cent. from the amount of such sale after deducting rebate.

"3rd. This contract provides that all shipments in above-described territory shall be shipped from the stock of said L. N. Brunswig and Co., and billed from them whenever possible, but if through preference or prejudice purchaser prefer to transact business direct from said Merrell Company goods shall be shipped from the depot at New Orleans, a memorandum furnished said L. N. Brunswig and Company, bill rendered, and amount collected by said Merrell Company, and credit given to said Brunswig and Company; so that the profit to the latter shall be the difference between the amount paid by them under this contract and the amount charged by said Merrell Company to the customer.

"4th. This contract shall go into effect as of January 1, 1899, and continue for three (3) years, with privilege of renewal, provided this agreement is mutually satisfactory. It is understood however that as a part of the consideration said L. N. Brunswig and Company hereby agree that they will, between January 1st and March 1st of each and every year during the life of this contract, make an or-

der to said Merrell Company amounting to not less than ten thousand ($10,000.00) dollars net over and above all rebates or other concessions.

"5th. It is mutually understood that the preference referred to in article 5 (five) of the primary contract requires: (a) The active co-operation and assistance of said L. N. Brunswig and Co. through their salesmen and otherwise; (b) that they will not manufacture or offer for sale a general line competitive with them, or (c) place in stock preparations of competing houses in excess of the specified demand. Provided however that this shall not prevent said L. N. Brunswig and Company from selling such elixirs and fluid extracts as are already included in their January prices current, under heading Brunswig's Elixirs and Fluid Extracts, nor shall this contract obligate them to cease manufacturing said elixirs and extracts during the term of said contract."

On March 6, 1901, plaintiffs brought the present suit. In their petition they alleged that under written agreement of the 21st of February, 1899, petitioners' agreed to receive from the Wm. S. Merrell Chemical Company, doing business at Cincinnati, Ohio, and in this city at No. 621 Gravier street, and herein represented by A. H. Burdsall, its manager, an assorted stock of pharmaceutical and special preparations manufactured by said defendant for the year which went into effect about the 1st of March, 1899, and which was to continue for three years, with the privilege of renewal, provided same was mutually satisfactory, but upon the condition, however, that orders for the goods of defendant should be given and had to an amount of not less than $10,000 net per annum over and above all rebates or other concessions, all of which would more fully appear by reference to the said agreement in writing annexed.

Second. That during the year succeeding the date of the agreement aforesaid it did in all respects comply therewith, and did order, receive, and pay for goods of the defendant in the sum of $35,887.25, and that, after deducting sundry items of debits, of goods returned, and the rebates allowed, petitioner had paid a net sum to defendant of $24,122.32 in cash.

Third. That the said agreement, not being mutually satisfactory, was by mutual con-

sent canceled on or about the 1st of March, 1900, and that at that time, and subsequent to said agreement of cancellation, it was verbally agreed and understood between plaintiff and defendant that the goods so received from defendant then remaining on hand in possession of plaintiff, so paid for and then unsold, should be exchanged from time to time as wanted, without any restriction or specific date therefor, such exchange to be had and made as might become necessary for other goods of the defendant, with the rebate as allowed in the eighth article of the said agreement of the 21st of February, 1899, the time limit therefor, being extended indefinitely for said purpose.

Fourth. That thereafter said agreement was in part in writing and otherwise fulfilled, and various goods were exchanged in accord therewith, but that thereafter, on or about the 25th day of February, 1901, petitioner, being desirous of exchanging another portion of the goods of said defendant for different goods by it manufactured, made due tender in writing thereof and therefor, and was met with written reply from defendant that it refused so to do, and would make no further exchange of its goods, thereby placing itself in default with petitioner in the premises.

Fifth. That it was necessary said agreement should be carried into effect, or that all of said goods so remaining on hand be returned to said defendant, and the price thereof, as paid, refunded to petitioner.

Sixth. That it had on hand unsold and unsalable, under the agreement aforesaid, goods of the net valuation of $6,795.26, as set forth in a statement to be exhibited, said goods being at place of business of plaintiff.

In view of the premises they prayed that there be judgment ordering the defendant to carry into effect the eight articles of the agreement of the 21st of February, 1899, up to and until the final disposal of the goods held or to be held by petitioner thereunder, or, in default thereof, that petitioner do have and recover judgment against said defendant in the sum of $6,795.26 as the value of the goods then in its possession, and paid for to the defendant, together with all costs accrued or to accrue thereon; and petitioner prayed for costs, and for all general and equitable relief in the premises.

The defendant answered. It pleaded, first,

the general issue. Further answering, it admitted that the said agreement, not being mutually satisfactory, was by mutual consent canceled on or about the 1st of March, 1900, by agreement in writing; but defendant denied that at ·that time or subsequent to said agreement of cancellation there was any verbal agreement or understanding between the plaintiff and defendant that the goods received from defendant then remaining on hand and in possession of plaintiff, so paid for and then unsold, should be exchanged from time to time as wanted, without any restriction, or any specific date therefor; and defendant expressly denied that the time limit fixed in the eight articles of said agreement of the 21st of February, 1899, was extended indefinitely or otherwise, for any such purposes as stated, or for any other purpose.

Defendant alleged that its part of the said contract was fulfilled to the letter up to and after the date of cancellation, and denied emphatically that any promise, written or verbal, was made to indefinitely exchange goods with L. N. Brunswig & Co., and averred that defendant did exchange goods for six months after cancellation of the contract, as provided in the eighth section of said instrument.

Defendant alleged and charged that plaintiffs had grossly violated the privilege of exchange granted in the original contract by selling the goods manufactured by defendant at prices lower than the same could be bought direct from factory, and thus injuring the trade of defendant, instead of assisting to maintain and protect it, as guarantied by original contract.

Defendant denied that the goods which plaintiff alleged that it had on hand unsold were unsalable, and alleged that said goods of the kind and character sold the plaintiff under the original contract were not unsalable, but were of the character as represented at the time of sale; and defendant denied that it was in any manner liable either for the value of said goods or for their exchange for other merchandise.

Defendant prayed that there be judgment in its favor dismissing the petition and claim of plaintiff, and reserving to the defendant all claims for damages which it might have because of the failure of plaintiff to properly comply with the contract and agreement in the premises, and defendant prayed for costs, and all general and equitable relief.

The district court rendered judgment in favor of plaintiff against defendant, ordering the defendant to carry into effect the eighth article of the agreement of the 21st of February, 1899, up to and until the final disposal of the goods held or to be held by said plaintiffs thereunder, within 30 days from the signing of this judgment, or, in default thereof, that said plaintiffs have and recover judgment against said defendant in the full sum of $6,795.26, as the value of the goods now in its possession and paid for to the said defendant, together with all costs accrued or to accrue thereon, and for costs of suit.

Defendant appealed.

### Opinion.

It is conceded by both plaintiffs and defendant that the contract between them terminated by mutual consent in March, 1900, and that during its life the obligations of each were complied with. The present differences between them are as to the rights and obligations of the parties which resulted from and followed the ending of the contract. When the contract ended, the plaintiffs had in their possession about $13,000 worth of goods which they had purchased and paid for during its existence. The termination of the contract by mutual consent freed the contracting parties from their respective engagements, except in so far as it provided for and guarded and declared what should be the rights of each by reason of the closing of the contract. The eighth article of the contract reads as follows:

"As a protection to the party of the second part [the present plaintiffs] said Wm. S. Merrell Company hereby agrees to exchange such goods as may be found least desirable for their trade for other articles of their manufacture as the party of the second part may select, provided however that the privilege of exchange is exercised within six months following the discontinuance or cancellation of this agreement, and provided also that the prices ruling at the date of exchange shall· govern all such transactions, and that freight charges connected with such exchange shall be paid equally by the parties

of the first and second parts, conditions of exchange to be within the terms as expressed in a circular of said Wm. S. Merrell Chemical Company regarding exchanges of stock, which circular forms a part of this agreement; but it is specially understood as a part of this agreement, applying to the original purchase as well as to all subsequent purchases, that articles quoted in part first of the aforesaid pamphlet list shall not be exchangeable for articles quoted in part second and vice versa."

In the circular referred to it was provided that the Merrell Chemical Company would make exchanges according to its conditions twice a year, in July and January.

The parties having made a law for themselves by these stipulations, they must be governed by it, unless, after the closing of the contract, they modified the same.

It will be seen that the article places no limitation upon the extent of the right of exchange, though it does place a limit upon the time in which this right was to be exercised. Plaintiffs claim that after the contract had terminated it was agreed that the time limit should be waived, leaving the extent of the right of exchange unlimited, as it was by contract itself. Defendants concede that the time limit was changed from what it was, as fixed in article 8, at six months, but they insist that in lieu thereof it was agreed that, while the exchange should continue beyond the six months, it was subject to being stopped when the stock in hand should have been reduced to a reasonable amount. The district court was called upon to determine by its decree which of the two contentions was correct, and its decision under the evidence was in favor of the plaintiffs. The correctness or incorrectness of that judgment is the matter before us.

In his reasons for judgment the district judge said:

"The court does not consider that the contract was an ordinary contract of sale. It was as much a contract of agency as of sale, and unique in its character. The plaintiffs, according to the contract, had in fact received goods from the defendants, selected by themselves, sold by the efforts of their agents and unsalable without their efforts, and plaintiffs paid the price."

We do not think the contract, in so far as the ownership of the goods by the plaintiffs was concerned, was one of agency. The plaintiffs received and paid for the goods, and they became their property. The first goods shipped were selected by the defendants, but, the selection not being deemed judicious for trade purposes in plaintiffs' territory, the after-shipments were controlled by themselves. The prices which they (plaintiffs) paid for the goods were much lower than they would have been had the plaintiffs purchased them under ordinary conditions. They were made low by reason of the respective obligations which the parties entered into in regard to the disposal of the sale after plaintiffs purchased them. The latter, to a certain extent, consented to a modification of their right of absolute ownership, while the vendors consented to become, through their own drummers, agents for the sale of the goods, not as sales of property belonging to their employers, but of property belonging to plaintiffs. These after-arrangements were made in the supposed interest of both parties.

The contract was one of sale, coupled with a right of subsequent exchange, with some incidental agency to them by the defendants. When the goods in the hands of the plaintiffs were sold, the sales made were not of defendants' property. The prices went to them, and not to defendants. The plaintiffs, not the defendants, determined who should buy. They had, as owners of the property, the right of absolute rejection of any orders sent them by defendants' drummers; and the loss from any injudicious or imprudent sales was a loss to them, not to the defendants.

Mr. Merrell, the president of the defendant company, in testifying to what occurred at the interview between himself and Brunswig, in regard to the matter of the exchange of the stock of goods in the hands of plaintiffs at the time of the termination of the contract, said: "The conversation was with Mr. Brunswig, and, as I say, with Mr. Burdsall, who accompanied me at the time, so there should be no disagreement between any arrangements I made with Mr. Brunswig regarding the exchange of goods. Mr. Brunswig referred, as he has stated, to the action of our competitors, Parke Davis & Co., of Detroit, who preceded us with them in a

similar arrangement [exactly the same arrangement as the Merrell Chemical Company had in effect]; and I said to them that our contract set forth the conditions of exchange, but that, so far as the provisions of that exchange were concerned, we would be more liberal than it provided in this regard; that we would exchange anything in part first for anything else in part first, and anything in part second for anything else in part second, the rebate goods taking care of themselves. * * * This was the only arrangement and the only contract relative to the exchange of goods that was made, other than that provided in the original agreement itself. We went along for most of the year, principally for the first six months, making exchanges with Brunswig & Co., and when, along in October, I was in attendance at the National Wholesale Druggist Association in Chicago, and there I learned that Brunswig & Co. were taking our goods."

At this point the court stopped the witness, saying he should not state what he had learned, as that was hearsay. The witness, proceeding in his testimony, replied to questions asked him as follows:

"Q. What was the limit of agreement you made with Mr. Brunswig?

"A. Simply that we would continue the exchange for a reasonable period until the stock was reduced to a reasonable point.

"Q. Did you make any promise for the future—that it should extend for all time?

"A. No, sir; under no circumstances would I make such an arrangement as that.

"Q. Did you or not agree with Mr. Brunswig that the privileges contained in the eighth article of the original charter [contract] should be renewed or continued?

"A. No, I did not.

"Q. Did you prescribe any term during which these exchanges should continue?

"A. Only as I have said—the restriction of the exchange of anything in part first for anything else in part first, and anything in part second for anything else in part second.

"Q. And until the stock should be reduced?

"A. Yes, sir.

"Q. Did you obligate yourself in any manner towards Mr. Brunswig at that conversation, or any other, to allow him the privilege of exchanging the stock of goods of the Merrell Chemical Company which he had on hand so long as they thought fit, or until the stock should be entirely consumed?

"A. No, sir; no such arrangement was ever made.

"Q. Did you bind yourself in any way to continue the exchange so long as they should see fit?

"A. No, sir.

*    *    *    *    *

"Q. Now, it appears, Mr. Merrell, that after this conversation, and after this agreement, that from time to time your house in the city have exchanged goods with the house of Brunswig & Co. Was that a matter of contract?

"A. It was entirely a matter of courtesy, because they were small, trifling transactions, and were entirely a matter of courtesy; but in October, as I have stated, and after the letter which I have put in evidence was written, we declined to do any more with them."

Brunswig's testimony contradicted that of Merrell. Parker (Brunswig's partner) supported his statement, while Burdsall (defendants' manager) supported that of Merrell. Counsel of defendants, quoting Merrell's testimony, refer to it as directly contradicting Brunswig, showing that the only concession made was made out of good will, and without consideration, and consisted of his consent to exchange goods with Brunswig & Co. until the stock held by that house should be reduced from between $10,000 and $11,000 to a reasonable amount; that amount and the continuation of his agreement being absolutely within his discretion, and the instructions given by him to his New Orleans manager were explicitly to this effect.

Burdsall testified that Mr. Merrell and Mr. Brunswig both rose from their seats, and Mr. Merrell said: "Mr. Burdsall, we will vary our usual contract so far as article eight is concerned. We will not compel Mr. Brunswig to make up a list of goods which he wants to exchange, and return for them a long list of goods which he has in stock, but he can buy as he wants from time to time, and you must select from the stock he has on hand a sufficient amount so that at the end of the month the account will practically balance, and you are instructed to continue this until the stock is decreased to a reasonable amount." The other instruction

in variance from article eight was this: He was not to exchange by selection—that is, according to our selection—or exchange fluid extracts for fluid extracts; was to exchange anything in part first for anything in part first, and so as to anything in part second.

The witness further testified that there was no time fixed for the dicontinuance of it, nor any fixed limit during which it was to run; that the original contract had been canceled when he received his instructions; that after this their house (Merrell Chemical Company) exchanged with them for, he should say, eight or nine months, very liberally; that they had during that time made a liberal and reasonable reduction of the stock which they had in hand at the time of the cancellation; that it was then about ten or eleven thousand dollars, and at the time the exchanging was stopped it was about six thousand dollars.

Defendants' counsel say that: "All that defendants did (and this gratuitously as a concession) was to consent to continue this exchange until the stock was reduced to a reasonable figure. No fixed time, and no fixed limit was agreed to. It was a gratuitous concession, of which the donors had and retained the control. The exchanges were continued nearly a year, until the stock was reduced over a third down to some $6,000, during which time plaintiffs never bought a dollar of defendants' goods. In the following October the exchanges were suspended."

Defendants not only complain of the conclusions reached by the district judge upon the merits, but also upon the terms of the district court's judgment. They say: "The demands of the plaintiffs were only that defendants be ordered to exchange certain goods under an alleged agreement. Should this agreement be established, the only judgment which could be rendered would be one ordering the continuance of the exchange under its condition, and would be satisfied by their compliance. The suit not being for the annulment of the sale, and plaintiffs being in possession of the goods, and having made no tender of the same for the recovery of the price, no money judgment therefor can be rendered in their favor and against the defendants. The district court orders defendants to carry into effect an agreement which is alleged and proven to have been annulled and revoked before the institution of the suit by mutual consent of the parties thereto, and the court cannot, by its judgment, enforce this dead contract, and its judgment is not in accordance with the provisions thereof."

We understand defendants' contention to be that the consent of the parties that the contract should terminate carried with it the destruction of every clause and stipulation which it contained, the eighth article included; that, therefore, any agreement or consent thereafter of the defendants to exchange goods with the plaintiffs was a new agreement—a gratuitous concession, without any consideration whatever passing to them therefor, leaving them free to dictate and control the terms under which the exchange should be made.

We do not view matters from that standpoint. We think the ending of the contract by mutual consent left standing the eighth article, which provided expressly what the rights of parties should be at the termination of the contract. That article conferred upon the plaintiffs the right to exchange the goods which it might then have in hand without limit as to the extent of the goods to be exchanged; the only limitation being that the exchange should be made within a fixed period. Whatever agreement the parties may have made on that subject was not a new, but a modification of the original, contract on the subject. We would not be justified in assuming that the modification made was a mere gratuitous concession without motive or consideration made by the defendants to the plaintiffs. It might well be that it was to the interests of the defendants that the exchanges should not be made so quickly and in bulk. We do not agree with counsel as to what the probabilities would be in respect to a modification of the terms of article 8 of the contract. It would be difficult to believe that plaintiffs, having an absolute contract right to exchange for a period of six months their entire stock on hand, should be willing to yield that right for the privilege of a mere undefined extension of time beyond the six-months limit, the duration of the extension being left absolutely to the will of the Merrell Company. That the agreement between the parties, whatever it may have been, did extend the time limit of the contract, is shown

by the fact that exchanges continued in fact beyond that period. We are inclined to believe that Merrell's belief that plaintiffs were, after the termination of the contract, illegally selling their products at too low a rate, had more to do with the cessation of exchanges than did the absence of right on the part of the plaintiffs to demand them. We think plaintiffs were entitled to exact their continuance. Defendants are mistaken as to the character of this action. Plaintiffs are not asking for the nullity of a sale of goods which they had bought, and the return to them of the price which they had paid for them, and yet holding onto possession of the goods themselves. They are demanding the specific performance of the "promise of exchange" of goods made by defendants, which contract of exchange they desire to have carried out, and which they are still willing that defendants should have accorded to them the option and opportunity of performing, with the prayer only alternatively and contingently advanced for a moneyed judgment. We do not think defendants can urge as a defense, under the circumstances of this case, a want of tender or consignment. In so far as the judgment of the district court directs the defendants to carry out the exchanges as called for by article 8 of the contract (and that direction may be to some extent a variance from the agreement made between the parties after the termination of the contract) that is a matter, according to defendants' theory, which is in their own favor—a matter which plaintiffs, rather than they, should complain of.

We think that the judgment of the district court ordering the defendant to carry into effect the eighth article of the agreement of the 21st of February, 1899, up to and until the final disposal of the goods held or to be held thereunder by petitioners, is correct, and we hereby affirm the judgment to that effect; but we think that the requirement of the judgment that this should be done within 30 days from the signing of the judgment should be stricken out, and it is hereby stricken from the judgment. We think the rights of parties will be better protected by changing the form and phraseology of the judgment.

For the reasons assigned it is hereby ordered, adjudged, and decreed that the plaintiffs, the commercial firm of L. N. Brunswig & Co., composed of Lucien N. Brunswig and Arthur I. Parker, do have judgment against the defendant, the Wm. S. Merrell Chemical Company, ordering the defendant to carry into effect the eighth article of the agreement of the 21st of February, 1899, up to and until the final disposal of the goods held or to be held thereunder.

It is further ordered, adjudged, and decreed that the said plaintiffs do have and recover judgment against the said defendant in the full sum of $6,795.26 as the value of the goods in the possession of and paid for to the said defendant, together with all costs accrued or to accrue, and for costs, conditioned, however, that no execution shall issue on the moneyed portion of this judgment so long as the defendant shall comply with the first portion of the judgment herein, ordering it to carry into effect the said eighth article of agreement, nor for any amount greater than that for which defendant shall fail to execute said portion of the judgment. It is further ordered, adjudged, and decreed that the judgment appealed from, except in so far as the same is modified hereby, is affirmed; and it is further ordered, adjudged, and decreed that this cause be, and it is hereby, remanded to the district court, to be carried into execution according to the terms thereof. Costs of appeal to be paid by the appellees.